47 So.3d 1253 (2010)
S.C.
v.
J.T.C.
No. 2080756.
Court of Civil Appeals of Alabama.
April 2, 2010.
*1254 Linda Collins Jensen, Mobile, for appellant.
Vanessa Arnold Shoots, Mobile, for appellee.
MOORE, Judge.
S.C. ("the mother") appeals from a judgment of the Mobile Juvenile Court finding her child, T.E., dependent and awarding custody of the child to J.T.C., the child's maternal grandmother ("the maternal grandmother"). We dismiss the appeal as being from a void judgment.

Background, Facts, and Procedural History
The facts pertinent to the disposition of this appeal are as follows. On November 30, 2007, the Mobile Juvenile Court ("the juvenile court") entered a judgment declaring T.E.E. ("the father") to be the father of the child, declining to find the child dependent, awarding custody of the child to the father, and awarding the mother "all reasonable rights of visitation." Following the entry of that judgment, the child, the father, and the mother all moved to Virginia. The mother thereafter moved into "Section 8" federally subsidized housing for low-income families under the United States Housing Act of 1937, as amended, 42 U.S.C. Sec. 1437 et seq., with her boyfriend, her two older children, her niece, and her niece's two children. While the mother was residing there, the father allowed the mother to exercise physical custody of the child during the weekdays while he exercised physical custody of the child on the weekends.
In September 2008, the mother was evicted from the federally subsidized housing; she then arranged to move in with C.D., the child's maternal aunt. The mother did not immediately inform the father of the move because, the mother testified, she believed the father would be upset. However, she later told him and they planned for the father to pick up the child on October 25, 2008. The day before, October 24, 2008, the maternal aunt, without the mother's knowledge, checked out the child from school early and transported the child to Mobile to the home of the maternal grandmother.
The maternal aunt testified that, when the mother moved in with her in September 2008, the child's clothes appeared unclean and ill-fitting and the child's hair was matted. She testified further that, over the next month, she observed that the mother allowed D.S., the child's older sister, to provide primary care for the child *1255 and that D.S. would hit the child with her hand and with objects. K.C., the mother's niece, testified that, during the time she lived with the mother, D.S., not the mother, had provided primary care of the child and that D.S. would slap and punch the child, which actions the mother would not effectively stop. K.C. also testified, contrary to the mother's testimony, that the child would be allowed to stay outside and ride her bicycle at night without supervision and that the mother did not make the child go to bed at any certain time. According to the maternal aunt, the child informed her that D.S. had drug the child across a field, knocking out two of the child's teeth. The maternal aunt testified that she took the child to the maternal grandmother's house in order to protect the child from further danger.
On October 28, 2008, the maternal grandmother filed in the juvenile court an instanter petition for custody of the child, alleging the dependency of the child. That same date, the juvenile court granted the maternal grandmother "instanter temporary custody" of the child. On November 7, 2008, the juvenile court conducted an ore tenus hearing and, on November 12, 2008, it awarded the maternal grandmother "temporary custody" of the child based on the "emergency petition" filed by the maternal grandmother on October 28, 2008. The juvenile court then held a "final hearing" on February 11, 2009. On April 24, 2009, the juvenile court entered a judgment finding the child dependent, awarding the maternal grandmother custody of the child, and awarding the mother and the father daytime visitation in Mobile County upon 48 hours' notice. The mother timely filed a motion for a new trial, which the juvenile court denied. The mother timely appealed to this court.

Discussion
On appeal, the mother first argues that the juvenile court lacked subject-matter jurisdiction to enter the April 24, 2009, judgment. Based on the following principles of law, we agree.
The November 30, 2007, judgment adjudicating the paternity of the child and determining the custody of the child gave the juvenile court continuing exclusive jurisdiction over custody matters relating to the child. See § 30-3B-202, Ala.Code 1975. That continuing jurisdiction ended when the child and the parents no longer resided in Alabama. See § 30-3B-202(a)(2), Ala.Code 1975. Thereafter, the juvenile court could modify its original custody determination "only if it ha[d] jurisdiction to make an initial determination under Section 30-3B-201." § 30-3B-202(b).
Section 30-3B-201(a), Ala.Code 1975, a part of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala.Code 1975, sets forth when an Alabama court has jurisdiction to make an initial custody determination:
"(a) Except as otherwise provided in Section 30-3B-204[, Ala.Code 1975,], a court of this state has jurisdiction to make an initial child custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction *1256 on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, [Ala.Code 1975,] and:
"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."
The juvenile court did not have jurisdiction pursuant to § 30-3B-201(a)(1) because Alabama was not "the home state of the child on the date of the commencement of the proceeding" and because Alabama "was [not] the home state of the child within six months before the commencement of the proceeding" on October 28, 2008.[1] The juvenile court did not have jurisdiction pursuant to § 30-3B-201(a)(2), (a)(3), or (a)(4) because Virginia was the home state of the child and Virginia had not "declined to exercise jurisdiction on the ground that this state is the more appropriate forum." § 30-3B-201(a)(2). Thus, the juvenile court could exercise jurisdiction only "as otherwise provided in [Ala.Code 1975, §] 30-3B-204." § 30-3B-201(a).
Section 30-3B-204 provides:
"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."
Based on the testimony of the maternal aunt and the mother's niece, the juvenile court reasonably could have concluded that, when the child was removed to Alabama, the child was being "subjected to" or was "threatened with" "mistreatment or abuse." § 30-3B-204(a). Hence, the juvenile court properly could have exercised temporary emergency jurisdiction over the child. It appears from the terms of its November 12, 2008, order,[2] that the juvenile court acted pursuant to that jurisdiction *1257 when it granted the maternal grandmother "temporary custody" in response to her "emergency petition."[3]
However, temporary emergency jurisdiction did not authorize the juvenile court to conduct the subsequent dependency proceeding. Pursuant to § 30-3B-204(c),
"[i]f there is a previous child custody determination that is entitled to be enforced under this chapter, ... any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203[, Ala.Code 1975]. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires."
Hence, in the order awarding the maternal grandmother temporary custody to protect the child from the emergency circumstances, rather than setting the matter for further dependency proceedings, the juvenile court should have specified a definite period for the maternal grandmother to obtain a custody order from Virginia, see Feria v. Soto, 990 So.2d 418 (Ala.Civ.App. 2008), or to obtain an order from the applicable Virginia court declining to exercise jurisdiction because the Alabama juvenile court was a more appropriate forum.
The April 24, 2009, judgment did not simply resolve the temporary emergency affecting the welfare of the child; it went further by finding the child dependent and by awarding custody of the child to the maternal grandmother, thereby modifying the November 30, 2007, judgment. Because the juvenile court did not have jurisdiction to enter that judgment, it is void. See M.B.L. v. G.G.L., 1 So.3d 1048, 1051 (Ala.Civ.App.2008) ("A juvenile court of this state may not rely on temporary emergency jurisdiction to transfer custody for an indefinite period based on the best interests of the child, regardless of the existence of the facts pleaded by DHR [the Department of Human Resources] in its dependency petitions."). A void judgment will not support an appeal, and any appeal from a void judgment must be dismissed. See id.
Our disposition of this appeal does not alter the custody provision of the November 12, 2008, order. As stated above, the juvenile court had jurisdiction to enter a temporary order awarding the maternal grandmother custody for the protection of the child; the juvenile court simply exceeded its jurisdiction by failing to comply with the procedure set out in § 30-3B-204(c). In cases in which the juvenile court acts within its temporary emergency jurisdiction, but fails to follow the procedures set out in the UCCJEA, this court has remanded the case with directions for the juvenile court to comply with those procedures. See, e.g., M.B.L., supra. Therefore, we remand this case with instructions to the juvenile court to vacate its April 24, 2009, judgment and to revise its November 12, 2008, order to grant the maternal grandmother a definite and appropriate *1258 period in which to obtain an order from a Virginia court either assuming jurisdiction over this custody matter or declining to exercise jurisdiction in favor of the juvenile court in accordance with § 30-3B-201(3). In the event a Virginia court assumes jurisdiction, the juvenile court is directed to communicate and cooperate with that court to assure the protection of the child until a custody determination can be made in that court. See § 30-3B-204(d). If the Virginia court declines to exercise jurisdiction, the juvenile court may then reach the merits of the dependency petition filed by the maternal grandmother.
APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
NOTES
[1] The UCCJEA defines the "home state" of the child, in pertinent part, as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7), Ala.Code 1975.
[2] At the time of the November 7, 2008, hearing, § 12-15-153, Ala.Code 1975, authorized juvenile courts to exercise emergency jurisdiction for the protection of an endangered child and, when shown verified evidence of abuse or neglect injurious to the health or safety of the child likely to continue without a preventive order, to enter an ex parte custody order to alleviate the danger. Section 12-15-153 directed that, "[i]f an emergency order is issued, a hearing, after notice, must be held within 72 hours or the next judicial business day thereafter, to either dissolve, continue or modify the order." The juvenile court did not comply with that deadline, but the mother does not raise that issue on appeal. We note that § 12-15-153 has been amended and renumbered as § 12-15-141, Ala.Code 1975. See Act No. 2008-277, § 9, Ala. Acts 2008.
[3] It also appears that the juvenile court acted within its temporary emergency jurisdiction when it addressed the custody issue after learning that the child had been brought to this state without the permission of the parents. Section 30-3B-208, Ala.Code 1975, allows an Alabama court to assume temporary emergency jurisdiction in such instances, even though, generally, the court should decline to exercise jurisdiction in those circumstances.